# UNITED STATES DISTRICT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DR. DERRICK COLEMAN,**
Superintendent of the River Rouge School
District, **DEBORAH HARPER,** Trustee of
the River Rouge School District Board of
Education, and the **RIVER ROUGE
SCHOOL DISTRICT,** a municipal school
district,

       Plaintiffs,

**v.**

**MICHAEL E. DUGGAN,** in his official
and individual capacities, **THE CITY OF
DETROIT DEPARTMENT OF
TRANSPORTATION,** a municipal
corporation, and **OUTFRONT MEDIA
GROUP,** a foreign limited liability
company,

       Defendants.

**Case No. 19-13034**
**Hon:**

---

**LUSK & ALBERTSON PLC**
By:    Robert Schindler (P70925)
       Anya M. Lusk (P78137)
Attorneys for Plaintiffs
409 East Jefferson, Ave., Fifth Floor
Detroit, MI 48226
(248) 258-2850 / Fax (248) 258-2851
rschindler@luskalbertson.com

---

## VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATION,
## INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
## <u>AND OTHER RELIEF</u>

Plaintiffs, **DR. DERRICK COLEMAN**, **RIVER ROUGE SCHOOL DISTRICT,** and **DEBORAH HARPER,** file this Verified Complaint for Civil Rights Violations, Injunctive Relief, Declaratory Judgment, and Other Relief, for the following reasons:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Dr. Derrick Coleman is the Superintendent of the River Rouge School District and has held said position since May 28, 2012.

2.      Deborah Harper is a Trustee of the River Rouge School District Board of Education and a resident of the School District.

3.      The River Rouge School District ("District") is a general powers school district, organized and operated pursuant to the Michigan Revised School Code, MCL 380.1, *et seq.*

4.      The District's central administrative office is located at 1460 West Coolidge Highway, River Rouge, Michigan 48218.

5.      Defendant Michael Duggan ("Duggan"), is the Mayor of the City of Detroit and, in his official capacity, as an individual, and under color of law, has committed acts that violate Plaintiffs' constitutional rights.

6.      Defendant City of Detroit Department of Transportation ("DDOT") administers and operates the City of Detroit's municipal bus system and is a department organized and operated by the City of Detroit.

7.     The offices of Duggan and DDOT are within the City of Detroit.

8.     Defendant Outfront Media Group, LLC, ("Outfront") is the exclusive agent that handles DDOT's advertising spaces on its buses throughout the City of Detroit and surrounding areas, exercises substantial business in the State of Michigan, and is located at 88 Custer Avenue, Detroit, MI 48202.

9.     This Court has subject matter jurisdiction pursuant to 28 USC § 1331.

10.    Venue is properly laid in this Court pursuant to 28 USC § 1391(b).

11.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

12.    Public schools in Michigan receive approximately 90% of their general fund revenue from a foundation allowance, which distributes state funds to each public school district on a per-pupil basis.

13.    Distribution of the foundation allowance is determined by pupil enrollment, with the majority of the foundation allowance for individual public school districts being based upon pupil enrollment during the membership count day in September; consequently, the vast majority of a public school district's general fund revenue directly reflects its pupil enrollment in September.

14.    Dr. Derrick Coleman was hired by the District on May 28, 2012, and the District has enjoyed an increase in student enrollment throughout his term.

3

15.    Deborah Harper, as a Board member and as a taxpayer within the District, has an interest in the outcome of this lawsuit as increased student enrollment provides the District with increased funding which benefits the District, its students, and the surrounding community as a whole.

16.    The District's growth resulted, in part, from Dr. Coleman's orchestration of an advertising program for the District wherein District advertisements are featured on DDOT buses via a contract with Outfront.

17.    The District has been advertising on DDOT busses since approximately 2012.

18.    The subject contracts between Outfront and the District, dated June 13, 2019, were for an advertising campaign orchestrated by Outfront to begin on July 8, 2019, and concluding on September 1, 2019.  **(Exhibit A; Exhibit B).**

19.    On July 3, 2019, Outfront employee, Devin Holly, issued an email to Dr. Coleman indicating the contracts could not be performed as agreed and the School District's advertisements would not be displayed on DDOT busses because, "The Mayor of Detroit has decided for DDOT to run only Detroit Public Schools advertising on the buses."

20.    Outfront took said action despite contractual terms requiring Outfront to honor the contracts with the District through their entire term.

4

21.    The termination of the parties' contracts, coupled with the reality that Dr. Coleman and the District strategically planned said advertising for purposes of creating awareness of the attributes of the District throughout the advertising campaign, damaged the District and its enrollment prospects when compared with prior years; importantly, the termination was especially damaging to the District because it occurred during the state-wide open enrollment period wherein public schools actively enroll new students.

22.    Notably, Outfront and Duggan held direct knowledge that the District began advertising on DDOT advertising space via contracts with Outfront, or its predecessor CBS Outdoor, since approximately 2012.

23.    As a result, the District incurred monetary damages and opportunity costs associated with diminished advertising space in metropolitan Detroit since the date of Defendants' breach.

24.    To enumerate, Duggan, DDOT, and Outfront conspired and collaborated to terminate and violate the subject contracts between the District, contrary to state and federal law, in the following ways:

    a.    Duggan attempted to cast a negative light upon the District by singling out and discussing the District's bussing of school-

5

aged students residing in the City of Detroit to the District in the State of the City speech on March 6, 2018.[1]

b.  The State of the City speech occurred after Dr. Coleman formulated and executed a bussing plan for District students residing in the City of Detroit.

c.  This led to an effort wherein on or around July 3, 2019, Duggan instructed DDOT and Outfront to terminate their contracts with the District.

d.  In addition, due to Duggan's direction, DDOT instructed Outfront to decline to post advertisements for the District despite a contract requiring Outfront to complete same beginning July 8, 2019.  **(Exhibit B).**

e.  This is further evidenced by emails from Devin Holly, an Account Executive for Outfront, to Dr. Coleman dated August 1, 2019, wherein he informed Dr. Coleman that Outfront did not post District posters in metro Detroit since "our current poster inventory in metro Detroit is limited for your specified campaign dates."

---

[1] The relevant portion of Duggan's speech begins around the 9:20 mark at the following link: https://www.youtube.com/watch?v=GXXhODF7hns

f. Notably, all of these actions occurred despite Dr. Coleman's numerous requests for adherence to the contracts.

## INJUNCTIVE RELIEF

25. Plaintiffs petition the Court for a permanent injunction to prohibit Defendants from continuing to violate Plaintiffs' rights.

26. Plaintiffs seek to restore future contracts with Outfront and remedy the violation of constitutional rights perpetuated by Defendants under color of law.

27. Plaintiffs request that the Court enter permanent injunctive relief based on the fact that Duggan and DDOT created a designated public forum by advertising space on DDOT buses pursuant to the First Amendment of the United States and Michigan Constitutions and applicable to DDOT and Duggan via the Fourteenth Amendment of the United States and Michigan Constitutions. **(Exhibit A, p. 4, ¶ 13)**.

28. The District has and will continue to suffer irreparable injury because Defendants' actions have frustrated the District's student enrollment efforts, to which a substantial portion of the District's funding is tied, and, absent Court intervention, Defendants will continue to frustrate the District's student enrollment efforts in the coming years.

29.     There are no remedies available at law which can compensate the District for the loss of student enrollment in the 2019-2020 school year or thereafter.

30.     The balance of hardships weighs heavily in the District's favor.  Upon information and belief, Defendants have prohibited the District from advertising through DDOT in an effort to raise student enrollment in the Detroit Public Schools Community District.  However, prohibiting the District from advertising cannot guarantee students residing in City of Detroit will attend local public schools instead of seeking their education in one of the many surrounding school districts.  In contrast, prohibiting the District from advertising has already caused a decline in new student enrollment compared to previous years.

31.     The public interest would not be disserved by a permanent injunction. Consistent with certain portions of the Revised School Code, MCL 380.1, *et seq.*, K-12 students are not required to attend local public schools but may, instead, attend other school districts located within their county or a neighboring county. By advertising, the District is ensuring students within the City of Detroit are aware of their choices.

## **FIRST AMENDMENT PROTECTED SPEECH**

32.   On June 13, 2019, DDOT agreed to contract with the District wherein District advertisements were to be featured in an advertising campaign beginning on July 8, 2019, and continuing through September 1, 2019.

33.   DDOT has a policy and practice of accepting a wide array of advertisements for publication on its buses, including those which concern political, religious, or social issues.  **(Exhibit A, p. 4, ¶ 13)**.

34.   Specifically, DDOT is *currently* providing advertising space on their buses to a charter school company that has charter schools located within the City of Detroit.

35.   Thus, DDOT's policy includes the acceptance of both political and public issue advertisements, and advertisements of and from public school entities.

36.   Defendants' removal of the District's advertisements from DDOT buses evince a scheme by Defendants to breach the subject contracts via illegal content and viewpoint discrimination, in violation of the First Amendment.

37.   It is clear Plaintiffs will be prohibited by Defendants from future advertisements on DDOT buses, in violation of the First Amendment, unless this Court grants injunctive relief.

## DECLARATIVE RELIEF

38.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.  Plaintiffs contend they face threat of continued future harm if they are prohibited from contracting with Outfront to advertise on DDOT buses.  Defendants will continue to violate and abide by their decision to prohibit advertising from the District, including future advertising contracts, if this Honorable Court does not hold the Defendants' actions to be unconstitutional and illegal.

39.     In violating Plaintiffs' rights under the U.S. and Michigan constitutions, Defendants have acted and will continue to act under color of law.

40.     Plaintiffs are entitled to a declaration that a First Amendment deprivation via the actions of Duggan, DDOT, and Outfront is unconstitutional on its face.

## COUNT I: 42 USC § 1983 – FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION (DEFENDANT DUGGAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AND UNDER COLOR OF LAW)

41.     The foregoing paragraphs are repeated and incorporated as if fully set forth herein.

42.     The First Amendment of the U.S. Constitution states, in pertinent part: "Congress shall make no law. . . abridging the freedom of speech . . ."

43.   Duggan and DDOT created a designated public forum by accepting a wide array of advertisements for DDOT buses, the acceptance of which was generally unrelated to the geographical, commercial, social, or political message encapsulated by such advertisements.

44.   The policy, custom, and practice of DDOT is to make advertising space on DDOT buses generally available for advertising purposes to an entire class of speakers.

45.   The District's speech is compatible with the forum created by DDOT because the District advertises itself as a viable option for both students in the City of Detroit and students outside of its borders.  The acceptability of Plaintiffs' advertising is demonstrated by the fact that DDOT allowed Plaintiffs to advertise on its busses for years prior to the mandate from Duggan.

46.   Duggan's basis for restricting DDOT advertising space to the Detroit Public Schools Community District, to the exclusion of other school districts, including the District, *is not* a restriction that ties directly to the purpose of the forum and, therefore, illegally restricts the District's First Amendment speech.

47.   Duggan's actions constitute viewpoint discrimination in that the District's advertising was removed from DDOT's buses, contrary to its contractual obligations, yet the Detroit-based charter school company Cornerstone Schools was allowed to advertise on Defendant DDOT buses.

48. Further, Defendant Duggan's actions demonstrate the existence of "unbridled discretion in the hands of a government official" that effectuate viewpoint discrimination, particularly directed at the District's efforts to advertise on DDOT buses pursuant to the contracts between the District and Outfront. *Shuttlesworth v City of Birmingham*, 394 US 147, 150-151; 89 SCt 935; 22 LEd2d 162 (1969).

49. Duggan's actions effectively mandate a prior restraint on the District's First Amendment right to advertise in the described designated public forum.

50. Duggan's State of the City comments on March 6, 2018 reveal his plan to use City of Detroit resources to curtail the District's First Amendment speech.

51. Duggan's actions noted herein were performed under the color of law and with intent to violate the First Amendment rights of the Plaintiffs by abridging their right to free speech.

52. Duggan violated the First Amendment by illegally directing DDOT and Outfront to terminate the parties' contract.

53. Duggan has, intentionally or with reckless disregard for Plaintiffs' rights, engaged in content and viewpoint discrimination against Plaintiffs by abridging the District's First Amendment right to advertise in favor of, among others, Cornerstone Schools.

54.     Plaintiffs' right not to be discriminated against on the basis of content and viewpoint was firmly established at the time of Duggan's actions.

## COUNT II: ARTICLE 1, § 5 OF THE MICHIGAN CONSTITUTION (DEFENDANT DUGGAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES)

55.     The foregoing paragraphs are repeated and incorporated as if fully set forth herein.

56.     The Michigan Constitution provides that "every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or the press.  Const. 1963, Art. 1, § 5.

57.     Notably, the rights of free speech under the Michigan and federal constitutions are coterminous.  *In re Contempt of Dudzinki*, 257 Mich App 96; 667 NW2d 68 (2003).

58.     Duggan's actions, as described, *supra*, are violative of the Michigan Constitution's provision of the right to free speech to all persons, including the District.

59.     Duggan has engaged in content and viewpoint discrimination against Plaintiffs by abridging the District's constitutional rights to free speech as provided by the Michigan Constitution and favoring other similarly-situated actors, including Cornerstone Schools.

13

60.     Plaintiffs' right not to be discriminated against on the basis of content and viewpoint was firmly established at the time of Duggan's actions.

## COUNT III: 42 USC § 1983 – FIRST AMENDMENT OF THE U.S. CONSTITUTION (DEFENDANT DDOT)

61.     The foregoing paragraphs are repeated and incorporated as if fully set forth herein.

62.     The First Amendment of the United States Constitution provides, in relevant part, "Congress shall make no law . . . abridging the freedom of speech . . ."

63.     Duggan and DDOT created a designated public forum by accepting a wide array of advertisements for DDOT buses, the acceptance of which was generally unrelated to the geographical, commercial, or political message encapsulated by such advertisements.

64.     The policy, custom, and practice of DDOT is to make advertising space on its buses generally available for advertising purposes to an entire class of speakers. **(Exhibit A, p. 4, ¶ 13)**.

65.     The District's speech is compatible with the forum because it advertises the District as a viable option for both students in the City of Detroit and students outside of its borders. The acceptability of Plaintiffs' advertising is demonstrated by the fact that DDOT allowed Plaintiffs to advertise on its busses for years prior to the mandate from Defendant Duggan.

14

66.   Plaintiffs' advertising does not conflict with any of DDOT's policy practices or objectives.

67.   DDOT violated Plaintiffs' First Amendment rights by executing Duggan's directive to effectively discriminate against Plaintiffs on the basis of content and viewpoint through impediment of the District's contractual rights with Outfront.

68.   At the same time, DDOT favorably accepted advertisements from Cornerstone Schools and replaced the Plaintiffs' advertisements with Cornerstone Schools' advertisements.

69.   That, upon information and belief, DDOT does not have an advertising policy that only accepts advertisements from Detroit-based advertisers, as DDOT has accepted advertising from the District for years prior.

70.   DDOT has implemented a policy, custom, and/or practice that excludes the District from advertising its selected content and viewpoint on DDOT buses, despite its creation of a designated public forum that permits the type of content with which the District's advertisements are consistent.

71.   Said policy, custom, and/or practice violates the District's First Amendment rights because it constitutes content and viewpoint discrimination.

72.   Said policy, custom, and/or practice is neither narrowly tailored to meet a compelling interest nor rationally related to a legitimate state interest.

15

73.    DDOT will continue to engage in content and viewpoint discrimination against the District by prohibiting the District from future advertising.

74.    Plaintiffs' right not to be discriminated against on the basis of content and viewpoint was firmly established at the time of DDOT's actions.

## COUNT IV: VIOLATION OF ARTICLE 1, § 5 OF THE MICHIGAN CONSTITUTION (DEFENDANT DDOT)

75.    The foregoing acts are repeated and incorporated as if fully set forth herein.

76.    The Michigan Constitution allows every person to "freely speak, write, express and publish his views on all subjects . . . and no law shall be enacted to restrain or abridge the liberty of speech or of the press."    (Michigan Constitution, Article 1, § 5).

77.    DDOT's actions, as previously described in Count III above, violate the Michigan Constitution's provision of the right to free speech to all persons, including the District.

78.    Said actions taken by DDOT for the purpose of suppressing the District's freedom of speech are violative of Michigan law.

79.    DDOT has engaged in content and viewpoint discrimination against the Plaintiffs by abridging the District's constitutional rights to free speech as

provided by the Michigan Constitution and favoring other similarly-situated actors, including Cornerstone Schools.

80.    Plaintiffs' right not to be discriminated against on the basis of content and viewpoint was firmly established at the time of DDOT's actions.

## COUNT V: PROMISSORY ESTOPPEL (DEFENDANT OUTFRONT)

81.    The foregoing acts are repeated and incorporated as if fully set forth herein.

82.    Plaintiffs received a promise from Outfront to provide advertising space on the transit tail of DDOT buses beginning on July 8, 2019 and continuing through September 1, 2019, including the placement of 230 units of District advertisement posters within the advertising space, in exchange for a sum certain.

83.    Defendant Outfront should reasonably have expected to induce action on Plaintiffs' part, including expenses related to constructing, providing, and paying for District advertisements on DDOT buses.

84.    The District, in fact, relied on said promises made by Outfront, expended time and resources on creating and providing said advertisements, and reasonably expected Outfront to execute its promised obligations.

85.    Outfront informed Dr. Coleman on July 3, 2019, that it would not honor its promises in light of the directive of Duggan and DDOT.

17

86.     Due to Outfront's failure to fulfill its promise, the District suffered a decline in new student enrollment compared to previous years, to which a substantial portion of the District's funding is tied.

87.     It is clear that injustice to the Plaintiffs resulted and continues to result from Outfront's failure to honor its promises, and that injustice may only be avoided by performance of Outfront's promises.

## COUNT VI: BREACH OF CONTRACT (DEFENDANT OUTFRONT)

88.     The foregoing acts are repeated and incorporated as if fully set forth herein.

89.     Plaintiffs clearly entered into valid contracts with Outfront, dated June 13, 2019.  **(Exhibit A and Exhibit B).**

90.     The contracts are written and require Outfront to provide advertising space on DDOT buses beginning on July 8, 2019, through September 1, 2019.

91.     Plaintiffs have historically advertised during this period via contracts with Outfront because it is the main enrollment period for students in the K-12 system in the State of Michigan.

92.     Notably, Plaintiff receives a specific funding amount per pupil from the State of Michigan Department of Education for each student that enrolls at the District.

93.     Further, the District has enrolled significantly more new students during the summer enrollment period from 2012-2018 when it began advertising with Outfront.

94.     The Plaintiffs have complied with the Plaintiffs' obligations under the contract including payment of all sums due pursuant to the subject contracts.

95.     It is clear the Defendant breached its duty to provide a timely advertising campaign pursuant to the specifications of the contract.  **(Exhibit A, Advertising Period column, p. 1).**

96.     Defendant Outfront further breached its contract with Plaintiffs when it failed to provide the substitute accommodations required under the contract after failing to perform the initial bus advertising.

97.     That representations made by Devin Holly to Dr. Coleman on July 3, 2019 clearly demonstrate Outfront intended to breach the subject contracts.

98.     Plaintiffs assert said breaches are resulting in damages to the District in the amount of Five-Million Dollars ($5,000,000.00).

**WHEREFORE**, the Plaintiffs respectfully ask this Honorable Court to enter the following relief:

A.     A declaratory statement that:

1.     Defendant DDOT created a designated public forum by accepting a wide array of political, social, and commercial advertisements from public and private advertisers; and

2.     Defendants Duggan and DDOT engaged in content and viewpoint discrimination when they permitted Detroit-based school operators, such as Cornerstone Schools, to advertise in said designated public forum while prohibiting Plaintiffs' similar advertisements in the same forum.

B.     A permanent injunction that prohibits Defendants Duggan and DDOT from preventing the District from advertising, including advertisements used for the District's enrollment campaign, provided that the advertisements are compatible with the designated public forum referenced herein.

C.     An order requiring:

1.     DDOT to allow the District to post advertisements on DDOT busses in the same, or similar, manner that it had been doing so for years prior to Defendant Duggan's order.

2.     Outfront to post advertisements on DDOT buses and Outfront billboards consistent with Outfront's promises to Plaintiffs, upon which Plaintiffs relied to their detriment;

3.      DDOT to pay Plaintiffs for damages occurred as a result of its breach of promise or contract with Outfront, of which the District was a known beneficiary, as well as consequential damages.

4.      Outfront to pay Plaintiffs for damages for its breach of its promised obligations and consequential damages;

5.      DDOT to pay Plaintiffs actual and punitive damages for its actions taken that violated Plaintiffs' First Amendment rights and rights under the Michigan Constitution, as well as costs and attorney's fees; and

6.      Defendant Duggan to pay Plaintiffs actual and punitive damages for his actions taken, in an individual capacity, that violated Plaintiffs' First Amendment rights and rights under the Michigan Constitution, as well as costs and attorney's fees, consistent with 42 U.S.C. § 1983 and § 1988 and other relevant statutes.

D.      Award Plaintiffs any other relief the Honorable Court deems reasonable and just.

21

Respectfully submitted,

**LUSK ALBERTSON, PLC**

By: */s/ Robert T. Schindler*
        By:      Robert T. Schindler (P70925)
        Attorneys for Defendant
        409 E. Jefferson, Fifth Floor
        Detroit, MI 48226
Dated: October 15, 2019        (248) 258-2850

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 15, 2019, he served a copy of *Plaintiff's Verified Complaint for Civil Rights Violation, Injunctive Relief, Declaratory Judgment, and Other Relief* via the Court's CM/ECF system upon all attorneys of record in the above-captioned matter.

*/s/ Robert T. Schindler*
Robert T. Schindler

## **Verification**

Dr. Derrick Coleman, being first duly sworn, testifies that: he is the Superintendent of the River Rouge School District; he has reviewed this Verified Complaint; the allegations set forth in same are true; and, if called as a witness, he would competently testify the facts set forth in same from personal knowledge.

**Dr. Derrick Coleman**

### <u>Verification</u>

Deborah Harper, being first duly sworn, testifies that: she is a Trustee of the River Rouge School District Board of Education; she has reviewed this Verified Complaint; the allegations set forth in same are true; and, if called as a witness, she would competently testify the facts set forth in same from personal knowledge.

*Deborah L. Harper*

**Deborah Harper**

24